UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS R. INGRAO,<br><br>    Plaintiff,<br><br>    v.<br><br>JEREMY STOPPELMAN, et al.,<br><br>    Defendants. | Case No. 20-cv-02753-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 19 |

Plaintiff Nicholas Ingrao has brought a derivative action on behalf of Yelp against Defendants Jeremy Stoppelman, Charles Baker, and Joseph R. Nachman claiming that they breached their fiduciary duty to Yelp, Inc. ("Yelp").[1] Mr. Ingrao filed the instant action after submitting a pre-suit demand to the board of directors (the "Board") of Yelp, which refused to act on it.

Pending before the Court is Defendants' motion to dismiss Mr. Ingrao's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that he failed to plead facts with particularity demonstrating that the Board's decision to defer consideration of Mr. Ingrao's pre-suit demand was wrongful. *See* Docket No. 19 ("Mot.").

For the following reasons, the motion is **DENIED.**

## I.    BACKGROUND

A.    Factual Background

Mr. Ingrao's complaint alleges that Defendants "engaged in an unlawful scheme designed

---

[1] Yelp is also named as a nominal defendant.

to materially mislead Yelp shareholders about the purported success of the Company's business and advertising model and its prospects for future revenue and earnings growth." Docket No. 1 ("Compl.") ¶ 2. According to Mr. Ingrao, Defendants made false and misleading statements that violated federal securities laws, and such statements "were made in breach of their non-exculpable fiduciary duties of loyalty and good faith [to Yelp]." *Id*. These facts are the basis for Mr. Ingrao's claims herein, as well as the pending securities litigation before this Court (the "Securities Action"). *See Davis et al. v. Yelp Inc. et al.*, No. 3:18-cv-0400-EMC (N.D. Cal. Filed Jan. 18, 2018). The Securities Action is still pending, and the parties in that action are currently conducting fact discovery.

B.  Mr. Ingrao's Demand

On March 11, 2019, Mr. Ingrao submitted a pre-suit demand (the "Demand") to the Board requesting

> Yelp, acting by and through its Board, take critical steps to preserve and protect the Company's valuable claims against defendants. Specifically, plaintiff demanded: (i) that the Board cause Yelp to "file a Complaint for breach of fiduciary duty of care, breach of fiduciary duty of loyalty, and aiding and abetting breaches of fiduciary duties, contribution and indemnification against [defendants] in the United States District Court for the Northern District of California"; and (ii) the Board "cause Yelp to immediately file an answer in the Securities [Class] Action, and/or file a cross-complaint against [defendants] in the Securities [Class] Action, asserting claims for relief for breach of fiduciary duty, aiding and abetting breaches of fiduciary duties, contribution, indemnification and such other relief as the Board deems necessary to protect Yelp's interests against [Defendants].

*Id*. ¶ 19. The Complaint alleges that the Board conditioned its response to Mr. Ingrao's proffer of stockownership. *Id*. ¶ 22. Upon demonstrating stockownership, the Board deferred substantive consideration of the Demand until the resolution of the Securities Action. *Id*.

According to Mr. Ingrao's complaint, the Board "has taken no remedial action whatsoever against defendants." *Id*. ¶ 18. Mr. Ingrao also alleges that Yelp's funding of Defendants' defense in the Securities Action continues to damage Yelp and therefore the Board's inaction is a violation of its fiduciary duties to Yelp. *Id*. ¶ 22.

2

C.  Procedural Background

Mr. Ingrao filed this derivative action on April 21, 2020, alleging the following claims for relief: (1) breach of fiduciary duty; (2) unjust enrichment; (3) aiding and abetting breaches of fiduciary duty; and (4) contribution under Sections 10(b) and 21D of the Exchange Act. *See* Compl.  Defendants filed their Rule 16(b)(6) motion to dismiss on June 25, 2020.  *See* Mot.

At the September 24, 2020 hearing on Defendants' motion to dismiss, the Court encouraged Defendants to consider entering into agreements to toll the statute of limitations applicable to Mr. Ingrao's claims, which would obviate the need to decide the instant motion. *See* Docket No. 32.  In doing so, the Court agreed to wait seven days to decide the motion in order to give Defendants a chance to discuss the possibility of entering into tolling agreements. *Id.*  On October 6, 2020, however, Defendants submitted a status report asking the Court for more time—until November 12, 2020—to decide whether to enter into tolling agreements, citing the need for the individual Defendants to seek their own counsel to evaluate the matter.  *See* Docket No. 35.

On November 12, 2020, Defendants' counsel submitted a letter to the Court explaining that, on October 30, 2020, the Board had "decided to extend the tolling agreements from Yelp to each Individual Defendant" such that "the statutes of limitation applicable to the derivative claims Mr. Ingrao sought to assert derivatively on behalf of the Company would be tolled and suspended for the period beginning on March 11, 2019 and continuing until the earlier of (i) a final determination by the Yelp Board concerning Mr. Ingrao's derivative demand; or (ii) ninety days following a final resolution in the [Securities Action]."  Docket No. 38.  Defendants' counsel also told this Court that Yelp "will provide an update to the Court when it receives a response from the Individual Defendants."  In other words, although the Board decided to offer tolling agreements, the Individual Defendants have not agreed to enter into these agreements.

The Court deferred deciding the motion until after November 12, 2020 only because *all* Defendants represented that they would be able to decide whether to enter into tolling agreements by then.  As the individual Defendants decided not to respond in time or ask for more time to consider the matter, the Court will proceed to decide the motion on the assumption that the individual Defendants are not interested in agreeing to toll the statute of limitations for Mr.

3

Ingrao's claims.

## II.  LEGAL STANDARDS

A.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.  Rule 23.1

Federal Rule of Civil Procedure 23.1 addresses derivative actions by shareholders. Rule 23 states that "[t]he complaint must be verified and must . . . state with particularity any efforts by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3)(A)–(B).

"The derivative form of action permits an individual shareholder to bring suit to enforce a

4

1  corporate cause of action against officers, directors, and third parties." *Rosenbloom v. Pyott*, 765
2  F.3d 1137, 1147 (9th Cir. 2014) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95
3  (1991)). Here, the parties agree that Yelp is a Delaware corporation and Delaware law therefore
4  applies. A derivative claim is one belonging to the corporation, and it is the corporation, acting
5  through its board of directors, which must make the decision whether or not to assert the claim.
6  *See Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996), *overruled on other grounds by Brehm v.
7  Eisner*, 746 A.2d 244 (Del. 2000). "A shareholder seeking to vindicate the interests of a
8  corporation through a derivative suit must first demand action from the corporation's directors or
9  plead with particularity the reasons why such demand would have been futile." *Rosenbloom*, 765
10 F.3d at 1148 (citing Fed. R. Civ. P. 23.1). "Plaintiffs are entitled to all reasonable factual
11 inferences that logically flow from the particularized facts alleged, but conclusory allegations are
12 not considered as expressly pleaded facts or factual inferences." *Id.* (quoting *Brehm*, 746 A.2d at
13 255).

### III.     MOTION TO DISMISS

Defendants' motion to dismiss does not address the underlying merits of Mr. Ingrao's four claims for relief. Instead, Defendants contend only that Mr. Ingrao cannot plead, with particularity under Rule 23.1, that the Board's deferral of the Demand was wrongful. In response, Mr. Ingrao argues that the deferral equated to a failure to protect Yelp's corporate assets and is not entitled to deference under the business judgment rule.

"A stockholder filing a derivative suit must allege either that the board of directors rejected his pre-suit demand or allege with particularity why the stockholder was justified in not having made the effort to obtain board action." *Grimes*, 673 A.2d at 1216. "[T]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation." *Aronson*, 473 A.2d at 812. In the instant case, Mr. Ingrao submitted his pre-suit Demand to the Board, but the Board did not outright reject the Demand; it deferred making a final decision on the Demand until after the completion of the Pending Action.

Accordingly, there are two issues before the Court: (1) whether the Board's decision to defer investigation and/or consideration of Mr. Ingrao's Demand amounts to a rejection of the

1    Demand; and if so, (2) whether the decision is entitled to deference under the business judgment
2    rule.

3    A.   The Board's Deferral Amounts to a Rejection of the Demand

4    Delaware law is clear that "[i]n no event may a corporation assume a position of neutrality
5    and take no position in response to the demand." *Grimes*, 673 A.2d at 1218 (citing *Kaplan v.*
6    *Peat, Marwick, Mitchell & Co.*, 540 A.2d 726 (Del. 1988)). In *Furman v. Walton*, the parties
7    agreed that the board's deferred action on the plaintiffs' demand amounted to a rejection. *See* No.
8    06-cv-3532 SBA, 2007 WL 1455904, at *2 (N.D. Cal. May 16, 2007), *aff'd*, 320 F. App'x 638
9    (9th Cir. 2009) ("Both parties have effectively construed this deferral as being a rejection."). But
10   the *Furman* court nonetheless emphasized that, "under Delaware law, a corporation may not stand
11   neutral in the face of a shareholder's demand; it must affirmatively object to or support the
12   continuation of the litigation." *Id*. at 2 n.1. Indeed, a board must—at the very least—investigate a
13   demand as part of its duties to shareholders. *See Allison on Behalf of Gen. Motors Corp. v. Gen.*
14   *Motors Corp.,* 604 F. Supp. 1106, 1117 (D. Del. 1085), *aff'd*, 782 F.2d 1026 (3d Cir. 1985)
15   ("Upon receipt of a demand, the Board of Directors must investigate and evaluate the charges in
16   order to discharge its duty to the shareholders and manage corporate affairs responsibly.").

17   The complaint alleges that, "[a]lthough legally bound to undertake an independent
18   investigation in good faith and either accept or reject the Demand, the Board has instead chosen to
19   do nothing. The Board has functionally ignored the Demand for over a year[.]" Compl. ¶ 23.
20   Indeed, Defendants have not offered any evidence that the Board investigated Mr. Ingrao's
21   Demand. Rather, they state in conclusory terms that "the Board reviewed [Mr. Ingrao's] Demand
22   and made the conscious decision 'to defer further substantive consideration of the Demand until
23   the resolution of the [Securities Action]' because the Demand 'relates to the same underlying
24   allegations . . . which Yelp has denied." Reply at 2 (quoting Compl. ¶ 112). Additionally,
25   Defendants contend that the Board deferred taking action while the Securities Action was pending
26   because doing so was not in the best interest of Yelp and its shareholders. *Id*. This does not
27   appear to be much of an investigation at all.
28   Meanwhile, as the Board stands idle, the statute of limitations on Mr. Ingrao's derivative

6

breach-of-fiduciary-duty claim was set to run in May 2020. Mr. Ingrao made his Demand to the Board well in advance of that date, on March 11, 2019. Compl. ¶ 19. The complaint was likewise filed before the statute of limitations expired, on April 21, 2020. *See id*. Therefore, the Board's delay amounts to a constructive rejection of Mr. Ingrao's Demand because the statute of limitations has expired and Defendants have not offered a tolling agreement with respect to Mr. Ingrao's claims, which are considered Yelp's corporate assets. *See Nagy v. Bistricer*, 770 A.2d 43, 55-56 & n.23 (Del. Ch. 2000) (finding breach of fiduciary duty claims are assets of a company). In other words, the Board's failure to investigate and consider Mr. Ingrao's Demand amounted to a rejection of that Demand because by the time the Board makes a decision to accept or reject the Demand, presumably after the Securities Action is concluded, Mr. Ingrao will be barred by the statute of limitations from raising his derivative claims. *See Furman*, 2007 WL 1455904, at *5 (concluding that the board's "business judgment to defer investigating" plaintiff's demand was not a rejection because "for one year following the [board's] final determination concerning plaintiff's demand, [Defendants] will not assert any statute of limitations defense that did not exist on the date this action was filed in any action asserting the claims stated in plaintiff's demand.").

Accordingly, the Court concludes that the Board's decision to indefinitely defer the Demand in the face of an expiring statute of limitations amounts to a constructive rejection of the Demand because it forecloses Mr. Ingrao's claims altogether due to the statute of limitations.

B.  The Board's Decision Is Not Entitled to Deference

A board that rejects a demand "is entitled to the presumption of the business judgment rule, unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption." *Grimes*, 673 A.2d at 1219. More specifically, to overcome the business judgment rule's presumption, Mr. Ingrao must allege particular facts that create a reasonable doubt that the Board "acted in an informed manner and with due care, in a good faith belief that their action was in the best interest of the corporation." *Levine v. Smith*, 591 A.2d 194, 198 (Del. 1991), *overruled on other grounds by Brehm*, 746 A.2d 244. Under the business judgment rule, a court will not substitute its judgment for that of the board, and "the

board's decision will be upheld unless it cannot be 'attributed to any rational business purpose.'" *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (en banc) (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)). Therefore, the question before this Court is whether the Board's decision not to take any action on Mr. Ingrao's demand was attributed to any rational purpose.

In *Witchko v. Schorsch*, the court concluded that a board cannot simply point to a pending, parallel lawsuit in order to justify its inaction in a derivative suit. No. 15-cv-6043-AKH, 2016 WL 3887289 (S.D.N.Y. June 9, 2016). There, the plaintiff shareholder brought a derivative action on behalf of his company alleging that its officers and directors wasted and mismanaged fees paid to insiders and affiliates of the company. *Id*. at 1. The defendants moved to dismiss the derivative action arguing that the plaintiff lacked standing under Rule 23.1 because the board of directors deferred the plaintiff's request to file suit. *Id*. The district court disagreed, instead concluding that the board's six-page denial letter failed to "weigh[] the potential recovery from the lawsuit in any detail, in a way that would allow them to compare it to the costs." *Id*. at 3. Moreover, the board failed to produce a report that suggests it considered the merits of bringing such suit. *Id*. In other words, the *Witchko* court concluded that the Board had no rational purpose for deciding not to do anything about the plaintiff's demand.

While Defendants herein point to reasons why this Court should not follow *Witchko*—*e.g.*, it is a district court decision applying Maryland law rather than Delaware law—the decision's analysis is persuasive on the facts here. Like in *Witchko*, the Board here issued a single-page response to Mr. Ingrao's Demand, simply stating in conclusory terms that:

> Yelp's Board of Directors has considered Mr. Ingrao's derivative demand letter dated March 11, 2019 (the "Demand"). Because Mr. Ingrao's demand relates to the same underlying allegations in the [Securities Action], which Yelp has denied, Yelp's Board has decided to defer further substantive consideration of the Demand until the resolution of the [Securities Action].

Docket No. 20-5 (Declaration of Benjamin T. Halbig ("Halbig Decl.")), Ex E. The Board's response is less than half a page (compared to the six-page response in *Witchko*), and like in *Witchko*, it does not on its face demonstrate that the Board weighed any potential recovery from

8

pursuing Mr. Ingrao's derivative action or considered the merits of his breach-of-fiduciary-duty claims. Put simply, the Board here, like the board in *Witchko*, had no rational purpose for its inaction.

Defendants argue that acting on Mr. Ingrao's Demand before the resolution of the Securities Action "would not serve the best interests of Yelp and its shareholders" because Mr. Ingrao's derivative action "relates to the same underlying allegations in the [Securities Action]." *Id.* Ex. G. As an initial matter, this Court is concerned, as was the court in *Witchko*, that "[i]f the mere existence of pending class action lawsuits and government investigations were enough to outweigh all other factors, a company's rights of action against errant officers and directors would be seriously compromised." 2016 WL 3887289, at *4. Importantly, contrary to Defendants' argument, waiting for the resolution of the Securities Action is unnecessary to avoid duplicating the cost and burden of investigating Mr. Ingrao's claims or the risk of admissions, because the Court could stay the instant action until the resolution of the Securities Action. *See id.* ("Very little additional discovery would have to be added because of the derivative lawsuits, and a stay of any such supplemental discoveries also could be appropriate.").

More importantly, allowing this lawsuit to survive the motion to dismiss, even if it is stayed while the Securities Action is resolved, would preserve Mr. Ingrao's derivative claims because they would otherwise be foreclosed by the statute of limitations. Defendants do not argue—indeed they cannot argue—that this is not in Yelp's best interest. *See id.* ("The company's response to the demand letter argues that a lawsuit could be postponed but, as [the court] pointed out in oral argument, one theory of limitations is fast approaching, and there is not an exercise of business judgment that gives [the court] confidence in the Board's compromise of their right to sue.").

In sum, the Board's decision to defer investigation and consideration of Mr. Ingrao's Demand is not entitled to deference under the business judgment rule because it was not done in an informed manner and with due care, it is not in Yelp's best interest, and the Board has not offered any rational business purpose for it, especially considering the Board had the ability to agree to toll the limitations period but has not.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is **DENIED** without prejudice to any future motion to stay the case.

This order disposes of Docket No. 19.

**IT IS SO ORDERED**.

Dated: November 30, 2020

_____
EDWARD M. CHEN
United States District Judge